The first case today is number 22-1669, United States v. Edgar Joel Morales-Ortiz. At this time, would counsel for the appellant please come to the podium, introduce yourself on the record and begin. Good morning. May it please the court, my name is Julie Connolly and I represent the defendant appellate Edgar Joel Morales-Ortiz. This case presents the question of how many mistakes can be made in the plea process before it is found to have been unjust. I respectfully submit that too many mistakes were made in this case. The record shows that each of the items you identify as a mistake was corrected during the course of the proceedings. You're right, your honor, in the sense of the supervised release term and the total offense level, which are the first two mistakes that are presented in my brief, were corrected in the pre-sentence investigation report and at the sentencing hearing, but that doesn't mean that they were correctly presented to the defendant at the time that he pled guilty. And importantly, the sentencing judge, when those mistakes were made. At no time was there an objection to the PSR pre-sentence report for those who are not criminal law practitioners. That's right, your honor. So that is accepted as the record and there was a waiver there? Well, your honor, number one, the defense attorney wouldn't have objected to the PSR because the PSR actually had the correct information. It had the correct supervised release term and it had the correct total offense level. The problem here was that at the change of plea hearing, the defense counsel, the government and the judge all misinformed Mr. Morales. Then why didn't they move to vacate the plea at that point? That's a good question, your honor. And I think that... You weren't trial counsel. It's an important question, but I would also submit that if a close reading of the sentencing hearing indicates that the sentencing judge just blew right over that, did not stop and give either defense counsel or Mr. Morales an opportunity to withdraw his plea. When the defense counsel pointed out the fact that Morales had been misadvised at the total offense level and that he was looking to face a much larger sentencing range than he had been advised, which undermined his knowing entry of a plea, the sentencing judge just basically listened to him and then moved right on by. She didn't turn to the defendant and say, do you want to withdraw your plea? If that was obvious to defense counsel, that would have been a good time to say, your honor, in light of this, we move to vacate the guilty plea. With all due respect, you're right, your honor, but right now the issue is not the way defense counsel behaved, but the issue is how this impacted Mr. Morales' rights. Mr. Morales did not speak English. Mr. Morales was 21 years old. Mr. Morales is not an attorney. Mr. Morales was not aware that he had the opportunity to object and withdraw his plea. The brief which I've submitted addresses these issues on a plain error review. Counsel, may I ask you, because I understand your argument that we need to look at the entire record to see if your client's substantial rights were impacted here, but it seems to me that our previous case law says that if errors are corrected by the time of the sentencing hearing and there is no objection from the defendant to what happened at the change of plea, unless there's something else in the record to indicate that the defendant would have changed his mind, we don't vacate the plea. One example is the Romero-Galindez case, so I'm just wondering if you can comment on that. How is this case different from Romero-Galindez and is there anything in the record that indicates that the defendant would have wanted to change his plea based on what happened rather than the defendant is now asking to change the plea because of the ultimate sentence that he received? Well, in Romero-Galindez, it was also because of the ultimate sentence he received. I think the supervised release term ended up being life and he was not advised of that. But in this case, the defense attorney was not the most graceful or articulate objection, but did say at the sentencing hearing that his client had been misadvised and did not know when he entered the plea. And he also objected when the sentencing judge said that she was sentencing him based on brandishing a firearm. He spoke up, it's cited in my brief, the page in the sentencing hearing and said, no, he did not plead to that. And the judge agreed with him. Pardon me? The judge agreed with him. She did. That she had misspoken. She did. And the government tries to minimize the fact that she only, quote unquote, misspoke once. And yet she went on to say several times in the sentencing how he had brandished a firearm. She said. Okay. As to that, we're talking about a series of carjackings. We're talking about use of a firearm in a bar and outside a bar. I didn't understand whether you were arguing there is no factual basis in the related conduct for any conclusion that he was brandishing, at least on a plain error review. Well, the first of all, I think that we don't and with respect to the sentencing component of the argument, I don't think it's plain error review. I think it was adequately preserved based on the attorney's objection to her statement that he was brandishing. And on the fact that the statement of reasons and the judgment both cited subsection A2 instead of A1. And needless to say, he couldn't object after those were issued. Sentencing was already done with. So I think this is subject to not plain error review, but just the standard procedural error. Okay. Go back to your withdrawal of the plea argument. Okay. If I could just address your question about what the record showed, the PSR actually was undisputed that my client did not even possess a firearm in the first carjacking. In the second carjacking, there's no evidence that anyone possessed it. The victim said that she saw a gun as she was backing out of the situation that she was in with her car. She didn't say if anybody was holding it, if anybody was brandishing it. Maybe it was laying in the back seat. She didn't say anything. She just said she saw it. So the PSR is undisputed that he did not possess or brandish a firearm in the two crimes of conviction, which are the most important conduct here. With respect to the robbery later in the night, the PSR does show that he admitted to that. But I cite cases in my brief that address the fact that unproven conduct has to be weighed less than proven conduct. And the robbery was not proven. That never went through any kind of, he was never charged with it. He was never, he didn't plead guilty to it. It was a statement by a young man at 21 years old, you know, without advice of counsel. And I respectfully submit that that can't be the basis to increase his sentence by as much as the trial judge did, which was to essentially, even though she said she did not punish him for brandishing, she said that it was an upward variance. In fact, the sentence is exactly what he would have received if he had pled guilty to brandishing the firearm. And in these circumstances, I just think you can't take this 21-year-old young man, you can't take the errors out of the human context. And at some point, the court has to decide that too many errors, that if you look at them in isolation, maybe you can discount, maybe you can excuse away, but in the cumulant of effect in the context of a 21-year-old is that he was not given a just opportunity here. He had been in juvenile detention since he was 15. He had just gotten out of jail and did this, and that's a bad thing against him. That being said, he was very immature. He was uneducated. He had a terrible family life. And he was told the wrong total offense level. He was told the wrong supervised release. He certainly did not understand his possible sentencing ranges. These mistakes were repeated in the hearing and in the judgment and in the sentencing hearing and in the judgment and in the statement of reasons. In all three cases, the judge talked about punishing him for brandishing a firearm, and I respectfully submit it all serves to erode the strictures of Rule 11 that are intended to bring finality to criminal cases and ensure that justice is done. Thank you, Your Honors. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce herself on the record to begin? Good morning. May it please the Court, Julia Magonetes for the United States. Now, Mr. Morales has failed to show plain error in the Rule 11 proceedings that require vacature of his plea. Now, it's undisputed that at the change of plea hearing, Mr. Morales was advised of the incorrect supervised release term. He was told that it was three years or less when, in fact, a 924C has a supervised release term that is five years or less. And on plain error, that gets him past prongs one and two. But Mr. Morales cannot show any prejudice. And this Court has explained that in the Rule 11 context on plain error, he must show a reasonable probability that but for the error that had the district court said the supervised release term was five years, he would not have pleaded guilty. And that, on this record, Your Honors, he cannot do. And we look to see what happened after the proceeding that compels that conclusion. First off, the PSR was authored. And on two different portions of the PSR, the PSR contained the correct term of supervised release, stating that it was five years or less. At the sentencing hearing, both Mr. Morales and his attorney stated that they discussed the PSR. And at no point did they object to any portion of the PSR. And when the district court ultimately imposed a five-year term of release for Mr. Morales, there was no objection to that five-year term. Now, Your Honor, Judge Rickleman, you spoke about the case of Romero-Galindez and this Court's precedent. And I would like to correct something that Sister Counsel had stated. In that case, it was the same error. It was a 924C case where he was mistakenly told that it was three years when, in fact, it was five. And this case found that there was no plain error because the error, like in this case, had been subsequently corrected. And at that point, this Court was sure to notice that at the point when the PSR was corrected and the sentence was imposed, and this is this Court's language, that the defendant did not balk at any of those points of time. Because, like Mr. Morales, his concern was the total length of the sentence, not the supervised release. That was not the tail that was waving the dog here. I mean, the tail that was, excuse me. We understand. And this Court also noticed that that difference in the supervised release term, and at no means are we trying to minimize the restrictive nature of what supervised release is after a term of imprisonment, but this Court noticed that it wasn't dramatically different. It's not like the case where Sister Counsel may have been trying to talk about Rivera-Maldonado. That was a child pornography case where the possible maximum sentence was, for supervised release, was a supervised release term of life. And that was what happened in that case. So there you can call into question. Yes, Your Honor. But here, it's not just about the supervised release term. It's also about the total offense level that was incorrect. I agree, Your Honor, but that. So shouldn't we look at the two together, as your Sister Counsel has suggested? Your Honor, to the extent that that, the government sustains that that's not a Rule 11 error. When we look at what Rule 11 requires, it requires the District Court to apprise the defendant of the ceiling and the floor, the statutory minimum and the statutory maximum. And if we look at what this case, what this Court said in United States v. Jones, the Court really cannot give a fair assumption of how the guidelines will pan out at a future date. That's why we have a pre-sentence report. That's why the parties can then object to the pre-sentence report and bring any discrepancy before the sentencing court. What the court must do is properly ensure that he understands the nature of the charge, ensure that there's a factual basis, and ensure that he knows the penalties, the ceiling and the floor, the stat max and the stat min. And that is why we agree that there was an error in the supervised release term, because it was clearly he was misstated of it. But there is no error because the court does not have to talk about what guideline enhancements may be, what may come in or out, and that is the case of United States v. Jones that is cited in our brief. But even if it's, I understand your argument that it's not an error, but when we're looking at prong three of the plain error standard, and we have to understand, was there a reasonable probability that he would have changed his plea, and looking at the overall sentencing stakes, is it your position we can't look at the fact that he also was told the wrong TOL at the change of plea, and just assessing whether the entire record indicates that he didn't understand the sentencing stakes? Well, Your Honor, clearly that is something that can be taken into consideration when you're looking at if he can prove a reasonable probability, but for what error? Because you have to talk about the Rule 11 error. So the Rule 11 error in this case is the supervised release term. But then getting to another layer of Your Honor's argument, the plea agreement in this case was extremely beneficial to Mr. Morales-Gonzalez. Quite frankly, he could be in a worse case if the plea, in fact, in this case is withdrawn. When we looked to see what happened, he downplayed his first 924C from brandishing to possession, and that's a huge benefit to him because at that point, it went from a seven-year mandatory consecutive term to a five-year consecutive term. Now, that doesn't mean that the court could then not impose a variance, which it did in this case. But what it did, it allowed the parties to argue for that five-year term, which both parties did. It also cabined the government into requesting a 41-month sentence for both of the carjackings. So he received a great benefit in this plea, and it dismissed, at that point, the second 924C brandishing count, which was part of it. So when we're looking at not only did the error, would he have pled guilty in terms of did he know the supervised release term, but we can also look at the benefit of the plea. And here, the benefit of the plea was the government's recommendation. And at all points of the proceedings, we do know that he was properly advised that this was a Type B plea in both the plea agreement and at the change of plea hearing, and there's no dispute to that. It was always stated that these are the government's and the defendant's proposed guideline calculations, and that they do not, in fact, bind the court, that the court may reject them. And that not only that, if he were sentenced up to the statutory maximum, which in this case would have been life, that that wouldn't be a fair and just reason to withdraw the plea. So taking all of those factors in consideration, when we look at the only Rule 11 error that there is, because the court isn't required to get into the details of the total offense level possible sentencing enhancements that may or may not apply, we are not left with a sense that there is a reasonable probability that Mr. Morales-Ortiz would not have pled guilty had he known about the five-year versus the three-year. And that's why this case is on all fours with Romero-Galindez, and Romero-Galindez deals with the same type of error. Can I ask you about the sentencing argument in terms of the brandishing, you know, whether he was sentenced for brandishing or not? You've argued that we need to analyze that under plain error, but your sister counsel points out that much of the defendant's argument is based on what was clear from the documents that were entered, like the statement of reasons after the sentencing hearing. So how could he have made the objection at the time that you're saying the objection should have been made? Why don't we just look at this under our usual standard? Yes, Your Honor, and I think the preservation argument is important, and I'd like to answer that question in two parts. From, just to also correct sister counsel, at the end of the hearing, after the court imposed sentence, counsel never objected. So to the extent counsel asked, did Your Honor state that he pled guilty to brandishing a weapon? And the court said no, and after the court clarified that he pled guilty to the lesser inclusive and I imposed a variant sentence, counsel said nothing further. So preservation is important because it puts the court on notice of a potential error, and then it would have given the court an opportunity to possibly correct that error. So if at that point, counsel had believed that the court was either considering improper facts, that would have been the moment to give such an argument. And I feel that the argument on appeal here is that the district court thought that he pled guilty to brandishing, not that brandishing didn't occur, because quite frankly, Your Honor, that's undisputed. It's undisputed, he puts it in a statement, in a stipulation of facts, that his co-defendant, his brother at that point in the first carjacking, pointed the gun at the victim. So that brandishing occurred is undisputed. It appeared to me from the argument in the opening brief was that the district court believed he pled guilty to brandishing, when on various points in the record, the court is clear. The court opens the sentencing, not the procedure, but the guideline calculation with he pled guilty to possession, which carries a 60-month mandatory minimum sentence. And I believe that's at page 71 of the joint appendix. After discussing what happened, we have a misstatement, with the court said the weapons were brandished, and I know he actually down pled guilty to, and then she accidentally said brandishing, but the next thing she said was to 60 months. What we have here is a court cognizant of the count of conviction, but then taking the facts to then impose a variance. And just now to get to your question about the statement of reasons, yes, the statement of reasons does, as this court has explained in Morales Negron, serve a proper administrative purpose. It's given to the guidelines to then collect data to then give to Congress to make recommendations for guideline possible changes. But this court has clearly said that if there's a discrepancy between, may I finish my thought, your honors? If there's a discrepancy between the statement of reasons and the oral pronouncement, it's the oral pronouncement that controls, noting that especially in the District of Puerto Rico, the practice is that usually the probation officer fills out the statement of reasons and then it is adopted by the court. But in this case, there's nothing to believe that the court was unaware that the parties had down pled. It said that it reviewed the PSR, it reviewed the plea agreement, and it correctly always stated the guideline offense for possession, save the one slip of the tongue when she said brandishing. If there are no further questions, the government requests that this court affirm. Yeah. You know, it's worrisome that the magistrate judge who took the plea made the error that was made. How does this happen? Your honor, and quite frankly, I believe in this case, it was actually the prosecutor that reiterated the incorrect term that was put in the plea agreement. So when they said to please discuss the maximum penalties, it was the prosecutor that actually made that error. All right. So what has your office done to see that these errors do not recur? Yes, your honor. When I received this case, I can personally say that I did speak with the criminal division and it appeared to be. Now there's a new plea protocol where the correct, the plea agreements henceforth are including the correct term of supervised release. And in one of the co-defendants, because this was a three person, one of the co-defendants that actually was corrected prior to the correction. It just seems to be an unfortunate oversight that our office is aware of. And we will, to the best of our ability, ensure that it does not happen again. That we know 924Cs are class A felonies that have five years or less. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.